## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**JULIA PHILLIPS**                                               **PLAINTIFF**

**VS.**                          **No. 4:22-cv-00152 JM/PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration**                 **DEFENDANT**

## FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

1

Plaintiff Julia Phillips ("Phillips") appeals the final decision of the Acting Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Phillips maintains that the Administrative Law Judge ("ALJ") erred: (1) by failing to properly analyze the medical opinions as required by the regulations; (2) by failing to consider the combined impact of all of her impairments; (3) by failing to adequately evaluate her pain as required by the regulations; (4) by failing to obtain the opinion of a pain specialist; (5) by failing to meet his burden to establish that she retained the residual functional capacity "("RFC") to perform other jobs that exist in substantial numbers; (6) by deferring exclusively to the reports of the non-examining consultants; and (7) by failing to apply the appropriate standard of proof. Phillips also seeks a declaratory judgment that the Social Security regulations and policies "are unconstitutionally vague, leave too much discretion to ALJs and result in arbitrary and capricious decisions and such decisions often result in unequal treatment for similarly situated claimants." *Plaintiff's brief.* Page 32. The parties have ably summarized the testimony given at the February 22, 2021, telephonic administrative hearing. (Tr. 30-53). The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial evidence in the administrative record to support Kijakazi's decision. 42 U.S.C. § 405(g). The relevant period under consideration is

2

from August 15, 2019, the alleged onset date, through May 3, 2021, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed her attorney, Phillips described the part-time job she had been doing for the prior 2 to 3 years as a counter worker at a delicatessen. Phillips worked at that job 7-17 hours weekly, or about 4 hours a day.  She made sandwiches, meat trays, etc.  Phillips indicated her health problems caused her to miss days at the part-time job, missing 1-2 days weekly and maybe missing 8 days a month. She was required to stand while at work during her 4 hour shifts, and her boss at the delicatessen was accommodating, according to Phillips.  Phillips took pain medication for her back while at work, and could not work longer hours due to back pain and the inability to stand for longer periods.

Phillips testified that after her work shifts she suffered from  swelling in her feet.  She took additional pain medication and rested for a few hours after her shifts. Phillips described no problems using her hands and arms at work but also noted joint pain in her elbows, knuckles, ankles, and knees, and swelling in her fingers, ankles, and feet.  The swelling, Phillips said, caused an inability to lift and grip at times.  She observed that her hand problems became worse the more she used her hands,  that the swelling "comes and goes,", and was worse in her hands than in her feet.  (Tr. 41).

3

Prior to her part-time job, Phillips worked for about 5 years as a receptionist at a tire store, leaving due to health issues in 2019.  Before she left that job,  Phillips was "missing a lot of work" and in "a lot of pain" and dealing with swelling in her joints. (Tr. 37).   At that time, Phillips stated she was diagnosed with osteoarthritis, fibromyalgia, arthritis in her joints, and psoriasis (which was remedied after her doctor prescribed monthly shots of Cosentyx).  Phillips cited her primary problems at this job as back pain and inflammation in her legs and hands.

Phillips described a myriad of other impairments, such as pain in her back, shoulder, and left arm, all of which limited her ability to raise her left arm to shoulder height.  She also reported sleep problems which were treated with medications and a CPAP machine.  Additionally, Phillips claimed to suffer from intermittent knee pain, especially in her left knee, which was not remedied with prescribed exercises. She also complained of popping in her knee, and being required to manually lift her leg to get in her car at times.  She also found it difficult to start walking after sitting 45-60 minutes.

In addition to these problems, Phillips stated she suffered from one migraine headache a month, which required her to avoid light and noise and took about 24 hours to recover.  In January of 2020, Phillips had shortness of breath and chest pain and saw a cardiologist, who "didn't find anything significant."  (Tr. 45).

The ALJ questioned Phillips about thyroid problems, which she said were controlled by medications, although she stated her immune system was weakened and "I have to be kind of real cautious." (Tr. 46). Phillips stated she suffered from bronchitis and pneumonia during the previous year or so. Finally, she said her psoriatic arthritis, diagnosed in 2018, was severe when diagnosed (with a rash over 95% of her body) but was cleared up "tremendously" by the Cosentyx. (Tr. 48).

Dianne Smith ("Smith"), the vocational expert, described Phillips' past work as a deli counter worker, receptionist, general officer clerk, and cashier/checker. The ALJ posed a hypothetical question to Smith, asking her to consider a hypothetical worker of Phillips' age, education, and experience who could perform light work with the following limitations: could not be exposed to concentrated amounts of respiratory irritants such as dust, fumes, strong odors or extreme changes in temperature or humidity; and would be restricted to semi-skilled work where the interpersonal contact is routine but superficial, the complexity of tasks is learned by experience, involves several variables, use of judgment within limits, with little supervision required for routine tasks, and detailed supervision required for non-routine tasks. Smith testified that such a hypothetical worker could perform Phillips' past jobs of receptionist, general office clerk, and cashier/checker. In addition, Smith stated such a worker could also perform the jobs of desk clerk and collector. In response to a second

hypothetical assuming the worker could perform less than sedentary work with numerous restrictions, Smith stated such a worker could not perform any jobs.  (Tr. 49-52).

*ALJ's Decision:*

In his May 3, 2021, decision, the ALJ determined Phillips had the following severe impairments: fibromyalgia, disorder of the back, asthma, obesity, and mood disorder.  The ALJ  identified non-severe impairments of thyroid disorder, migraine headaches, obstructive sleep apnea, chest pain/shortness of breath, and psoriasis.

The ALJ found Phillips did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ considered Listings 1.15 (skeletal spine disorder), 1.16 (lumbar spinal stenosis), 3.02 and 3.03 (chronic respiratory disorders and asthma), and 12.04 (mental impairments).  The ALJ also considered fibromyalgia and obesity and determined these impairments, though not listed impairments, did not interact or combine with other impairments to meet a listing.

The ALJ considered four broad areas of functioning, found in 20 C.F.R., Part 404, subpart P, Appendix 1, in addressing Phillips' mental impairments.  (These areas are the "paragraph B" criteria).  He found Phillips had mild limitations in three areas -- (1) in understanding, remembering, or applying information, (2) in interacting with

others, and (3) in adapting or managing oneself.  He found moderate limitations in Phillips' ability to concentrate, persist, or maintain pace.  The ALJ found that the evidence failed to establish the "paragraph C" criteria because Phillips did not demonstrate a mental disorder lasting at least two years combined with other prerequisites.

The ALJ found that Phillips had the RFC to perform light work with the same limitations contained in the initial  hypothetical question posed to Smith.  The ALJ found Phillips' subjective allegations "not sufficiently supported by the record as a whole in light of the objective medical findings, the medical history and degree of medical treatment required, and the claimant's activities of daily living."  (Tr. 18).

The ALJ summarized the medical evidence, beginning with medical imaging results in August 2019, days after the relevant period for disability began.  He also noted diagnoses of psoriasis and obesity, and observed Phillips was diagnosed and treated by her primary care physician for anxiety, though not referred for specialized mental health treatment.

The ALJ also considered the opinion evidence in the record, consisting of the opinions of the state agency physical and psychological consultants.  The ALJ found these opinions "largely persuasive" and consistent with the medical evidence. (Tr. 18-19).

The ALJ concluded that Phillips was capable of performing her past relevant work as a receptionist, general office worker, and cashier/checker.  In addition, the ALJ relied upon Smith's testimony and opined that Phillips could perform other jobs in the national economy, such as desk clerk and collector.  Accordingly, the ALJ decided Phillips was not disabled.  (Tr. 10-21).

*Claim One – the ALJ failed to properly analyze the medical opinions as required by the regulations.*

Phillips contends the ALJ failed to comply with the relevant regulations for evaluating medical opinion evidence when considering the opinions of the state agency examiners.  The regulations governing the consideration of the medical opinions were revised for claims filed on or after March 27, 2017.  Phillips filed her claim in December 2019.   The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021).  The regulations now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to

"explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).

The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

*See Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

These regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion.

At the initial level of the disability process, Brad Williams, Ph.D., ("Williams") performed a non-treating psychiatric consultative examination in February 2020. (Tr. 58-68). Williams identified the evidence of record he reviewed as a February 2020 Function Report, February 2020 Pain Form, Work History Report, medical records of L.J. Patrick Bell, D.O., two February 2020 Headache Forms, medical records of Little Rock Diagnostic Clinic, and four additional documents described as "unknown name" and dated in January and February 2020. (Tr. 60-61). Williams noted a diagnosis of anxiety, which was being managed by her primary care physician with medication, and no referrals for further treatment. He also reviewed her activities of daily living, observing no issues with short term memory and concentration, no need for reminders

9

to tend to personal needs, and an ability to go out alone and shop.  Williams found non-severe impairments of anxiety and obsessive-compulsive disorders, and depressive, bipolar and related disorders.  He determined that  Phillips had mild limitations in all four "B" areas.  He concluded that Phillips "does not appear to be limited by mental factors to any degree."  (Tr. 63).   In May 2020, Abesie Kelly, Ph.D., ("Kelly"), at the reconsideration level, agreed with Williams.  (Tr. 93-100).

Jonathan Norcross, M.D., ("Norcross") performed a non-treating physical consultative examination in February 2020, reviewing the same records provided to Williams.  (Tr. 69-79).  As with Williams, Norcross' evaluation was at the initial level.  Norcross assessed Phillips with the RFC to perform light work with environmental limits.  He found she had musculoskeletal issues, morbid obesity, and headaches.

William Harrison, M.D., ("Harrison") examined the medical records in May 2020, at the reconsideration level.  (Tr. 100-105).   The records included documents from Arkansas Heart Hospital Clinic, Helena Regional Medical Center,  L.J. Patrick Bell, D.O., and Little Rock Diagnostic Clinic.  Harrison assessed Phillips with the severe impairments of degenerative disc disease, fibromyalgia, obesity, and migraines. He found Phillips could perform light work with environmental limitations.

In relevant part, the ALJ wrote:

". . . at the initial determination level, Jonathan Norcross, M.D., opined on February 28, 2020 that the claimant had severe physical impairments of degenerative disc disease, fibromyalgia, obesity, and migraine, with a residual functional capacity to perform light work as defined in the regulations, except limited to avoid concentrated exposure to extreme heat or cold, noise, vibration, pulmonary irritants, or workplace hazards. The state agency medical consultant at the reconsideration determination level, William Harrison, M.D., endorsed the same opinions on May 14, 2020. Each consultant has specialized Social Security disability program knowledge and experience serving as an independent, objective, neutral and impartial medical expert evaluating Social Security disability cases. Their opinions are largely persuasive because they are supported by explanation and citations to evidence and are largely consistent with the relevant medical evidence of record, except for the omission of the impairments of psoriasis, obstructive sleep apnea, and asthma, and assessment of the severity of the claimant's migraines.

The state agency psychological consultant at the initial determination level, Brad Williams, Ph.D., opined on February 26, 2020 that the claimant had nonsevere mental impairments of anxiety and depressive disorders, resulting in mild limitations in understanding, remembering, or applying information, social interaction, concentration, persistence, or pace, and adaptation. The state agency psychological consultant at the reconsideration determination level, Abesie Kelly, Ph.D., endorsed the same opinions on May 11, 2020. Each consultant has specialized Social Security disability program knowledge and experience serving as an independent, objective, neutral and impartial medical expert evaluating Social Security disability cases. Their opinions are largely persuasive because they are supported by explanation and citations to evidence and are largely consistent with the relevant medical evidence of record, although the relevant medical evidence of record, including the claimant's reports in medical evidence and hearing testimony, support a moderate limitation in concentration, persistence, and pace, with a consistent assessment of severity of the claimant's mood disorder.

(Tr. 18-19) (citations omitted).

As stated above, the regulations require the ALJ to explain his findings as to the

supportability and the consistency of the medical opinions.  Phillips challenges the supportability and consistency of the opinions of Norcross and Harrison, alleging these opinions "are based entirely on assumptions and speculation." Doc. No. 9, page 15.  This assertion overlooks the medical records examined by Norcross and Harrison, as well as the absence of any other opinion suggesting greater limitations.  Harrison cites to the medical records and concedes that certain impairments (psoriasis, obstructive sleep apnea, asthma, and an assessment of the severity of the claimant's migraines) were not noted by Norcross.  All of these impairments were considered non-severe by the ALJ.  Regarding psoriasis, Phillips testified to great improvement with medication.[1]  Regarding her headaches, Phillips noted good improvement with medication.  The opinions offered by the state agency medical experts were not conclusory or based on assumptions and speculation.

In large part, Phillips simply disagrees with the state agency experts and prefers her testimony to their findings.  However, the ALJ was tasked with examining the supportability and consistency of the opinions, and he performed this task.  Again, there were no medical opinions differing from those submitted by the state agency experts.

---

[1]

Phillips' improvement with Cosentyx, prescribed in September 2019, was significant.  (Tr. 537).

Phillips targets the state agency experts in other ways.  First, she claims that the ALJ should have considered additional factors other than supportability and consistency when evaluating the state agency experts' opinions.  There is no merit to this position.  The regulations require ALJs to explain their decisions as to the two most important factors - supportability and consistency. The ALJ did so.  The regulations do not require explanation of ALJ decisions related to the additional factors.  Additionally, Phillips' specific claim that the ALJ should have considered the "length of treatment, frequency of examinations, purpose of treatment relationships, extent of the treatment relationship, [and] examining relationship" is inapplicable and unhelpful, given that the state agency experts are admittedly not treating physicians.  Doc. No. 9, page 10.

Phillips also argues that the state agency experts are not neutral and impartial because they are paid by the state.  It is not enough to assert partiality of the experts based on payment.  "The use in social security disability determinations of a medical advisor, i.e., 'an expert who does not examine the claimant but who hears and reviews the medical evidence and who may offer an opinion,' was expressly approved in *Richardson v. Perales*, 402 U.S. 389, 396, 408, 91 S.Ct. 1420, 1425, 28 L.Ed.2d 1842 (1971)." *Janka v. Sec'y of Health, Ed. & Welfare*, 589 F.2d 365, 369 (8th Cir. 1978).

Phillips also claims that Williams' opinions are not credible because he does

not review the medical records in forming them.  To support this claim, Phillips refers to two affidavits in the record.  (Tr. 379-380).  Phillips' attorney and the attorney's law partner executed these affidavits, recounting a 2019 conversation with Williams where he purportedly stated he relied on excerpts from examiners rather than solely upon his review of medical records.  These self-serving affidavits do not undermine the opinion Williams offered in this case because Williams identified the specific medical records he reviewed in order to form his opinion.  Additionally, the affidavits attached by the attorneys to not pertain specifically to the case at bar.

Phillips' attorney also cites another incident in which a hearing officer submitted a false affidavit to a federal district court.  There is no assertion of false affidavits in this case and no evidence that any opinions offered in this case are false. Similarly, Phillips observes that the state agency medical experts "do not sign any kind of attestation or other statements indicating that their statements are truthful." Doc. No. 9, page 14, n. 3.  This observation is not sufficient to discredit the opinions offered in this case.  State agency medical experts are not required to attest to the truth of their reports by the regulations.  And the Court notes that there is also no such requirement for treating physicians.

Phillips also argues that "we do not know anything about the qualifications of" the state agency experts.  Doc. No. 9, page 17.  While Phillips may desire more detail,

14

the record shows the experts are either M.D.'s or Ph.D.'s.

Phillips' attorney "would bet a sizable amount" that the citations in Harrison's opinion were not authored by Harrison.  Doc. No. 9, page 15.  Phillips does not provide further information to support this claim and it is purely speculative.

Phillips asserts, without citation, that the ALJ's decision "was not actually written by the ALJ."  Doc. No. 9, page 15.  There is no evidence to support such a finding.

Phillips does not believe that the ALJ considered certain evidence because he used boilerplate language in the opinion stating the ALJ considered the evidence. Boilerplate language creeps into ALJ's decisions, Court Orders, and the briefs of the parties, particularly in areas of the law where regulations are abundant, such as social security.  The mere presence of boilerplate language neither proves nor disproves that the evidence was considered.

In sum, Phillips's first claim, that the ALJ erred in considering the medical opinions of the state agency experts, is without merit.  The ALJ complied with the relevant regulations.

*Claim Two – the ALJ failed to consider the combined impact of all of her impairments*

Phillips alleges the ALJ failed to consider the combined effects of her

impairments, as required by the regulations.  Kijakazi does not dispute the ALJ's duty to consider the combined effects but maintains this duty was satisfied.  Kijakazi is correct.  The ALJ acknowledged his duty repeatedly in his decision, explicitly finding Phillips did not have "an impairment or combination of impairments" which met a Listing.  (Tr. 14).  The ALJ also wrote that he considered the entire record and evaluated all of Phillips' impairments, both severe and non-severe.  The decision specifically addresses whether fibromyalgia or obesity might combine with other impairments to render Phillips disabled.  There is no merit to this argument.

*Claim Three – the ALJ failed to adequately evaluate her pain as required by the regulations*

Phillips faults the ALJ's consideration of her subjective statements about her pain.  The relevant factors to be considered are found in SSR 16-3p and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3p.

The ALJ is not required to explicitly discuss each relevant factor.  *See Goff v.*

*Barnhart*, 421 F.3d 785 (8th Cir. 2005).

Here, the ALJ considered Phillips' activities of daily living, which included part-time work of 7 to 17 hours per week at a delicatessen.  Phillips' February 2020 Function Report also detailed the significant caretaking she provided for two grandchildren, ages 5 and 11, living with her.  (Tr. 282, 285).  In that same Function Report, Phillips responded that she had no known side effects to her medications.  (Tr. 291).  The ALJ evaluated the objective medical evidence, including the largely unremarkable imaging results from August 2019 on Phillips' hands, knees, and lumbar spine.  Phillips correctly notes that she reported pain to her providers, and she was prescribed pain medications.  The medical records also reflected normal physical examinations, including normal range of motion in her cervical, thoracic, and lumbar spine, as well as numerous times where providers counseled Phillips to exercise, lose weight, and adjust her diet.[2]

The ALJ did not explicitly discuss every *Polaski* factor, and was not obligated to do so.  The focus on the objective medical evidence, the absence of medical findings to support Phillips' assertions, and her daily activities contributed to a proper and permissible analysis of her allegations of pain.

---

[2] Normal range of motion in spine noted from August 2019 to January 2020.  (Tr. 525, 534, 542).  Exercise, weight reduction, and diet measures were given to Phillips during this same time period.  (Tr. 527, 537, 543, 569, 570, 571, 572, 573, 574, 575,

*Claim Four – the ALJ failed to obtain the opinion of a pain specialist*

Phillips maintains legal error was committed when the ALJ failed to develop the record by obtaining a report from a pain specialist. Even though Phillips is correct that the ALJ has a duty to fully and fairly develop the record, and that a pain specialist may be appropriate in some cases, she fails to demonstrate how the record, which appears to contain all treatment records during the relevant period, was inadequate and how additional reports would cure the inadequacy. The objective medical evidence in this case was ample and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient). While the ALJ has an obligation to fully develop the record, there is no bright line test for determining whether he has done so; the determination is made on a case by case basis. *See Battles v. Shalala*, 36 F.3d 43 (8th Cir. 1994). The key is whether the record provides the ALJ with ample information to allow an informed decision to be made. Here, the medical evidence is ample. Phillips, who bears the burden of demonstrating her disability, does not show that the ALJ, tasked with digesting all of the evidence, erred in relying upon the record before him.

As noted, the ALJ relied on medical records from treating physicians, which can provide affirmative medical evidence supporting an RFC determination. *Johnson*

18

*v. Astrue*, 628 F.3d 991 (8th Cir. 2011).  The ALJ was not required to seek and rely upon an opinion from a pain specialist.  *See Hensley v. Colvin*, 829 F.3d 926 (8th Cir. 2016) (no requirement that an RFC finding be supported by a specific medical opinion).   Here, the absence of any limitations by treating physicians in excess of her ALJ-determined RFC is significant.  The record provides a sound basis for the ALJ to determine her RFC, and substantial evidence supports her findings.  The ALJ did not err in failing to further develop the record.

*Claim Five – the ALJ failed to meet his burden to establish that Phillips retained the RFC to perform other jobs that exist in substantial numbers*

Phillips challenges the ALJ's RFC determination, contending the ALJ failed to shoulder his burden of showing she could perform other jobs in the national economy.  According to Phillips, this burden of proof shifts to the ALJ "once a claimant demonstrates that he or she is unable to do past relevant work."  Doc. No. 9, page 23.  This argument fails to recognize that the ALJ determined Phillips could perform her past relevant work as a receptionist, general office worker, and cashier/checker.  The ALJ found, *in addition to past relevant work*, Phillips could perform other jobs.  (Tr. 19).  So, the ALJ found, at Step 4, Phillips could perform her past relevant work.  In the alternative, the ALJ found, at Step 5, she could perform other jobs in the national economy.  The shifting of the burden of proof only occurs if the ALJ's decision was

exclusively a Step 5 ruling.

Even so, the Court treats this as a general allegation of error in determining Phillips' RFC.  The ALJ is responsible "to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations."  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  In this instance, the ALJ considered Phillips' testimony, her written reports, the objective medical records from treating physicians, the absence of opinions and limitations imposed by the treating physicians, and the opinions of the state agency consultants.  These factors have been discussed above.  Substantial evidence supports the ALJ's RFC determination.

*Claim Six – the ALJ deferred exclusively to the reports of the non-examining consultants*

Phillips makes two arguments under this claim.  First, she urges that the ALJ cannot rely solely on the opinions provided by the state agency consultants, "as was done in this case."  Doc. No. 9, page 25.  This reliance cannot constitute substantial evidence to support the ALJ's RFC findings, according to Phillips.

This argument is without merit.  As noted above, the RFC determination did not

hinge *solely* on the opinions provided by the state agency consultants.  Instead, the ALJ considered those opinions along with other factors in reaching his decision. Phillips, citing *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) and other cases, contends the state agency opinions are not substantial evidence "in the face of a conflicting assessment of a treating physician."  Here, however, there was no contrary opinion from a treating physician.  The state agency opinions were the only RFC opinions in the record.  The ALJ did not err in relying upon those opinions, along with the other relevant evidence, to formulate Phillips' RFC.

Phillips also argues the ALJ failed to develop the record by obtaining opinions from the treating physicians.  This argument is similar to Phillips' fourth claim that the ALJ failed to obtain an opinion from a pain specialist.  And as recognized above, the ALJ may resolve the issues if the record before him is adequate.  The records here, particularly those from treating sources  L.J. Patrick Bell, D.O., and Little Rock Diagnostic Clinic, are informative and provide a sufficient basis for the ALJ's finding. The ALJ permissibly relied on the record before him without further development.

*Claim Seven – the ALJ failed to apply the appropriate standard of proof*

Phillips suggests that the ALJ failed to apply the appropriate standard of proof. Citing *Thomas v. Sullivan*, 928 F.2d 255 (8th Cir. 1991), Phillips seems to contend that the ALJ has adopted the standard of "strongest case possible" rather than the

appropriate standard of preponderance of the evidence.  Doc. No. 9, page 29.  No evidence supports this claim.

*Declaratory Judgment*

Phillips alleges the Social Security regulations and policies "are unconstitutionally vague, leave too much discretion to ALJs and result in arbitrary and capricious decisions and such decisions often result in unequal treatment for similarly situated claimants." Doc.  No. 9, page 32.  The Eighth Circuit Court of Appeals has recently considered this assertion:

> Finally, while Jordan argues that the Social Security Administration's regulations and policies are unconstitutional, she does not allege any facts explaining how those issues caused the adverse ALJ decision in *her case*, or how a favorable decision in *her claim* for benefits would redress these alleged constitutional deficiencies. See Burks-Marshall v. Shalala, 7 F.3d 1346, 1349-50 (8th Cir. 1993) (Social Security claimant lacked standing to raise due process issue where she had not shown that alleged procedural deficiency had any factual connection to alleged deprivation). [emphasis added].

*Jordan v. Kijakazi*, No. 22-2843, 2023 WL 2733485, at *1 (8th Cir. Mar. 31, 2023).  The same reasoning applies in this matter.

In summary, the Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion.  The test is whether substantial evidence supports the ALJ's decision.  *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  This test is

satisfied in this case

Accordingly, the Court recommends that the final decision of Kijakazi be affirmed and Phillips's complaint be dismissed with prejudice.

IT IS SO ORDERED this 9th day of May, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

23